DETROIT EDISON COMPANY *v.* CITY OF DETROIT.

1. DEDICATION—EASEMENTS FOR PUBLIC UTILITIES.
    Easements for use of public utilities, but not vehicular traffic expressly dedicated on plats to the use of the public and comprised of 6- or 10-foot widths at rear of lots constituted a dedication to the city in trust for the public.

2. SAME—EASEMENTS—PRIVATE PERSONS.
    A right of easement cannot be obtained by or vested in an individual or private corporation by means of dedication.

3. SAME—PUBLIC RIGHTS.
    The essence of a dedication to public uses is that it shall be for the use of the public at large and while there may be a dedication of lands for special uses, it must be for the benefit of the public and not for any particular part of it.

4. SAME—PARTIES.
    The public must be a party to every dedication.

5. MUNICIPAL CORPORATIONS—PUBLIC PLACES—DEDICATION—PUBLIC UTILITIES.
    The provision of the Constitution conferring upon cities, villages or townships the reasonable control of highways, streets, alleys or other public places and requiring municipal consent to the use of such areas by public utilities embraces 6- and 10-foot wide easements at the rear of city lots dedicated to the use of the public for the use of public utilities but not vehicular traffic (Const 1908, art 8, § 28).

REFERENCES FOR POINTS IN HEADNOTES
[1] 16 Am Jur, Dedication § 22.
[2–4] 16 Am Jur, Dedication § 5.
[5, 6] 16 Am Jur, Dedication § 61; 18 Am Jur, Electricity §§ 17–19.

6. SAME—PUBLIC UTILITY—INSTALLATION OF SEWER—EXPENSE OF REMOVAL AND REPLACEMENT OF POLES.

The expense of temporary removal and replacement of plaintiff utility's electric poles in order to facilitate installation of city sewer in narrow easements at rear of city lots, dedicated to public use for public utilities and not vehicular traffic, must be borne by the public utility and not the city the same as if a street or alley were involved.

Appeal from Wayne; O'Hara (Chester P.), J. Submitted October 10, 1951. (Docket No. 52, Calendar No. 45,135.) Decided January 15, 1952.

Bill by Detroit Edison Company, a New York corporation, against the City of Detroit to restrain moving of utility lines and for declaration of rights with reference to whether plaintiff or defendant should bear cost of moving poles and equipment. Decree for defendant. Plaintiff appeals. Affirmed.

*Fischer, Brown, Sprague, Franklin & Ford,* for plaintiff.

*Paul T. Dwyer,* Corporation Counsel, and *Walter E. Vashak,* Assistant Corporation Counsel, for defendant.

NORTH, C. J. In the instant suit plaintiff, a New York corporation authorized to do business in Michigan, sought an injunction enjoining defendant from interfering with or moving plaintiff's utility (electric) poles except on condition that defendant defray the cost thereof and assume liability for any damage or injury to plaintiff's user of its alleged easements; and also a determination of the following question:

"Is the city of Detroit liable for necessary expense incurred in the removal and replacing of the plain-

tiff's poles in order to enable the city to construct its public sewers along the center of said easement?"

The relief sought by plaintiff was denied by the decree of the circuit court. This appeal followed. Plaintiff is possessed of franchise rights in the city of Detroit by which plaintiff, subject to certain limitations, is empowered:

"To erect, lay, operate and maintain in the public streets, alleys, *and other public places* of the city of Detroit, all needful and proper poles, masts, towers, mains, wires, pipes, lamps, motors and other apparatus, subject, however, strictly to all conditions and restrictions herein and hereinafter imposed, and all ordinances hereafter adopted concerning the same.   *   *   *

"Said corporation shall at all times be subject to the city ordinances now in existence or which may hereafter be passed relative to the use of the public streets *or other public spaces,* especially as to the putting up of lights and barriers at and around excavations."

In the city of Detroit on 2 separate occasions certain lands were platted, and these plats after being duly executed were accepted by the proper public authorities and duly recorded. In neither of these plats were there any alleys dedicated to the public. However, in each of the plats there was a reservation of space as an easement for the use of public utilities. On the recorded plat of 1 of these subdivisions at and across the rear of the lots there is shown a strip of land approximately 6 or 10 feet wide, and the following note appears on the plat:

"Note: A 6-foot space or 'easement' is shown, for the use of public utilities, not vehicular traffic, at the rear of (certain lots designated by number).

"A 10-foot 'easement' for above purpose, at rear of (other lots designated by specific numbers)."

The dedicatory language appearing on this plat recites:

"That the streets and easements as shown on said plat are hereby dedicated to the use of the public."

The plat of the other subdivision, which was duly executed, accepted and recorded, shows by lines on the rear and across all lots a space 12 feet in width, 6 feet on each lot, which in each instance is labeled: "Easement for public utilities, but not vehicular traffic." And on the plat of this second subdivision the dedicatory language states:

"That the streets and easements as shown on said plat are hereby dedicated to the use of the public."

Years before development of the controversy involved in the instant suit, plaintiff or its predecessors erected utility poles along the center line of the strips in the above 2 subdivisions reserved for public utilities' use; and these poles carrying the wires, et cetera, incident to plaintiff's public service were continuously maintained until the time this suit was started in February, 1948. In 1947, the defendant home-rule city started proceedings looking to construction of a sewer down the center line of the respective strips of land over which the easements had been dedicated for the use of public utilities. The construction by the city of this sewer necessitated the temporary removal of plaintiff's utility poles and also involved the replacement thereof after completion of the city's sewer. Plaintiff was notified by the city to remove its poles and wires. The controlling question in the instant case is: Which of these litigants shall bear the cost of temporarily removing and subsequently replacing plaintiff's utility poles and the wires, et cetera, in connection therewith? By stipulation of these parties, plaintiff, without prejudice to its contentions in the instant

case, has performed the task of removal and replacement at a cost somewhat in excess of $11,000.

Plaintiff admits that its franchise rights to erect and maintain its poles and lines in the public streets, alleys and other public places of the city are subject to reasonable regulations by the city in matters of physical operation. It admits that it could have been required to remove its poles at its own expense to permit construction of a public sewer, if its poles had been erected under its franchise rights; but plaintiff claims that instead of having been erected by virtue of its franchise rights, its equipment involved herein was erected "under the easement rights given by private grants, and that the city does not have the same control over these easements as it has over streets, alleys and other public places." In plaintiff's brief it is stated: "We claim that the language of the plats in question when properly construed indicates no intention to dedicate these easements to the public."

On the other hand defendant contends that it has the same rights in these easements, which have been dedicated for public purposes, that it has in the streets, alleys and public places to require plaintiff to relocate its facilities at plaintiff's own cost and expense in order that defendant may construct the sewer in question.

We are not in accord with plaintiff's contention just above noted. Instead, the easement areas here involved were not excluded or reserved from the respective dedications. Those easements for the limited or restricted purposes were expressly included in the respective dedications. Our review of this case brings the conclusion that plaintiff did not in consequence of the provisions in the dedication of the plats to these respective subdivisions acquire the property rights therein now asserted by plaintiff. Instead we are of the opinion that the dedication of

the easements in question, which is in the same terms and in connection with the dedication of the streets in these respective subdivisions (*i.e.*, to the use of the public), was a dedication to the city in trust for the public; and not a grant of right to individuals or private corporations.

"A statutory dedication of land by the filing of a plat cannot vest title in a railroad company to land designated on the plat by its name, since such companies have no power to take land by dedication." *Minneapolis, St. Paul & Sault Ste. Marie R. Co.* v. *Marble* (syllabus), 112 Mich 4.

"Title may be acquired (by defendant railroad company) by voluntary grant, purchase, condemnation, * * * or prescription, * * * *although not by dedication* (*Minneapolis, St. Paul & Sault Ste. Marie R. Co.* v. *Marble*, 112 Mich 4)." *Quinn* v. *Pere Marquette R. Co.*, 256 Mich 143, 149.

In *Kraushaar* v. *Bunny Run Realty Co.*, 298 Mich 233, we held (syllabus):

"The essence of a dedication to public uses is that it shall be for the use of the public at large and while there may be a dedication of lands for special uses, it must be for the benefit of the public and not for any particular part of it."

Also, in the *Kraushaar Case*, we quoted with approval from 16 Am Jur, p 359, the following:

"There is no such thing as a dedication between the owner and individuals. The public must be a party to every dedication. In fact, the essence of a dedication to public uses is that it shall be for the use of the public at large. There may be a dedication of lands for special uses, but it must be for the benefit of the public, and not for any particular part of it; and if from the nature of the user it must be confined to a few individuals, * * * the idea of dedication is negatived."

We are not in accord with appellant's contention that article 8, § 28, of the Michigan Constitution (1908) does not apply to the easement rights here involved, such claim being on the theory that these easement areas do not come within the constitutional expression of "public places." For many years these easement areas have been occupied and used by 2 public utilities—*i.e.*, by plaintiff and the Michigan Bell Telephone Company; and now, without its right so to do being challenged, the city has located a public sewer within the easement areas. With city approval, or by its action, doubtless water mains or gas pipes rendering public service might also be located within these easement areas. Such uses are designed for the benefit of the public and clearly bring the easement areas so dedicated and occupied within the constitutional expression of "public places." Article 8, § 28, of the Michigan Constitution is applicable to the easement areas involved in the instant case as "public places." We quote the contitutional provision:

"No person, partnership, association or corporaition operating a public utility shall have the right to the use of the highways, streets, alleys *or other public places* of any city, village or township for wires, poles, pipes, tracks, or conduits, without the consent of the duly constituted authorities of such city, village or township. * * * The right of all cities, villages and townships to the reasonable control of their streets, alleys *and public places* is hereby reserved to such cities, villages and townships."

We conclude that within the limited terms of the dedications here involved the city's right of control over and user in the designated strips are the same as in areas dedicated to the city for streets or alleys. This being so, it follows that, as plaintiff concedes under such circumstances, the expense of removing and replacing plaintiff's utility poles must be borne

by plaintiff. In consequence of our so holding, plaintiff obviously is not entitled to the injunctive relief sought.

The decree entered in the circuit court, which is in accord with our holding herein, is affirmed, with costs to appellee.

DETHMERS, CARR, BUSHNELL, SHARPE, BOYLES, and REID, JJ., concurred. BUTZEL, J., did not sit.